IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TOMMIE L. CARTER,

                                                    OPINION and ORDER
                    Plaintiff,

                                                        16-cv-55-bbc
          v.

ANTONIO CUMMINGS, ROBERT PICKLE
and JAY VAN LANEN,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se prisoner Tommie Carter is proceeding on two claims: (1) defendants Antonio Cummings and Robert Pickle (both correctional officers) were aware of a substantial risk that plaintiff would seriously harm himself on October 17, 2013, but they consciously failed to take reasonable measures to prevent the harm, in violation of the Eighth Amendment; and (2) defendant Jay Van Lanen (also a correctional officer) refused to take pictures of plaintiff's injuries on October 17, 2013, in order to prevent plaintiff from proving his claim, in violation of plaintiff's right to have access to the courts.

Several motions are before the court: (1) plaintiff's motion for sanctions, dkt. #86; (2) defendants' motion for sanctions, dkt. #92; (3) plaintiff's motion to withdraw his motion for sanctions, dkt. #95; (4) defendants' motion for summary judgment, dkt. #97; and (5) plaintiff's motion for summary judgment, dkt. #110.

1

Because plaintiff has withdrawn his motion for sanctions, I need not consider that motion. I am denying defendants' request to dismiss this case as a sanction, but I agree with defendants that it should have been clear to plaintiff when he filed his own sanctions motion that the motion was improper. Accordingly, I am requiring plaintiff to reimburse defendants for the reasonable expenses they incurred in responding to his sanctions motion before he withdrew it.

With respect to the parties' motions for summary judgment, I conclude that there are genuine issues of material fact requiring a trial on plaintiff's claim against Cummings and Pickle. I am dismissing plaintiff's claim against defendant Van Lanen without prejudice because that claim is not ripe.

OPINION

A. Sanctions Motions

In a motion the court received on October 17, 2016, plaintiff asked for "sanctions" and an "investigation" regarding an alleged failure of prison staff members to prevent plaintiff from harming himself in September 2016. Dkt. #87. None of the staff members discussed in the motion were parties to this case.

In response, defendants argued that the motion should be denied because plaintiff's allegations are outside the scope of his claims and because the allegations are false. Dkt.#92. In addition, defendants filed their own motions for sanctions, asking the court to dismiss the case for the same reasons. Id. Because this court has sanctioned plaintiff in the past for

2

making false allegations, defendants asked for an even more severe sanction, a general filing bar on future cases. Id.

Plaintiff then moved to withdraw his own motion for sanctions. Dkt. #95. He said that he brought his sanctions motion "in good faith" and that he did not realize at the time he filed it that he could not obtain sanctions for conduct that was outside the scope of his claims. He asked that defendants' motion for sanctions be denied as moot.

Defendants did not oppose plaintiff's motion to withdraw, but they did not withdraw their own sanctions motion. Instead, they argued that plaintiff's original motion showed his "disregard for the litigation process" and still required a sanction. Dkt. #96.

Defendants' arguments have some force. Plaintiff lacks credibility when he says that he was unaware until defendants filed their motion for sanctions that it was inappropriate for him to seek sanctions against individuals who are not parties and about conduct that is outside the scope of the case. In the August 17, 2016 order in this case (only two months before plaintiff filed his motion for sanctions), I informed plaintiff multiple times that he cannot raise issues outside the scope of his complaint. Dkt. #72 at 5-6 ("Plaintiff seeks a preliminary injunction to stop prison officials from transferring him to different prisons within the state. However, neither of plaintiff's pending lawsuits in this court is related to his placement at a particular prison and he does not allege that any of the defendants are responsible for transfer decisions, so this issue is outside the scope of this lawsuit."); id. at 7 ("[T]his motion raises issues that are outside the scope of these cases and is about officials who are not party to this case. If plaintiff believes that his cell conditions are

unconstitutional, he will have to file a separate lawsuit."); id. at 10 ("Although the allegations are disturbing, they are outside the scope of this lawsuit, like so many of the other motions plaintiff has filed. Again, plaintiff does not allege that defendants are involved in any of this conduct. . . . . He cannot insert new, unrelated issues into whatever lawsuits happen to be pending.").

In his previous cases, I gave plaintiff similar instructions that issues outside the scope of his claims should not be raised in the lawsuit. E.g., Carter v. Ashton, No. 14-cv-399-bbc (W.D. Wis. May 1, 2015), dkt. #62 at 7 ("Plaintiff does not explain how documents related to an alleged relationship with defendant Ashton are relevant to his claims, so that issue is outside the scope of this case."); Carter v. Ashton, 14-cv-399-bbc (W.D. Wis. June 11, 2015), dkt. #65 at 3 ("Because plaintiff has not filed a subpoena and he has not explained how any of the records he wants are relevant to his claims, I am denying this part of his motion."). Plaintiff fails to explain why he did not heed the court's repeated instructions.

That being said, dismissal or an outright filing bar would be harsh sanctions for filing a motion that should have been filed as a separate lawsuit, even if the party has made the same mistake in the past. Defendants do not identify any case in which similar conduct was sanctioned in that manner.

It is true that defendants seek sanctions not just because plaintiff's allegations are unrelated to the case, but also on the ground that the allegations are false. I dismissed both Carter v. Waterman, No. 13-cv-742-bbc (W.D. Wis.), and Carter v. Ashton, No. 14-cv-399-bbc (W.D. Wis.), as a sanction after finding that plaintiff had falsified allegations about

prison staff.  I declined to impose additional sanctions because plaintiff had not been sanctioned before, but I advised plaintiff that, if he "continues to make false allegations in this court and engages in other litigation misconduct, I will consider whether a more severe sanction is appropriate, including a monetary sanction and bar on filing additional lawsuits in this court."  Carter v. Waterman, No. 13-cv-742-bbc, 2016 WL 407331, at *9 (W.D. Wis. Feb. 2, 2016).  I agree with defendants that plaintiff's past conduct is a relevant consideration in determining whether plaintiff should be sanctioned in this case.  Averhart v. Sheriff of Cook County, Illinois, 752 F.3d 1104 (7th Cir. 2014) (history of litigation misconduct is relevant to determining appropriate sanction); e360 Insight, Inc. v. Spamhaus Project, 658 F.3d 637, 643 (7th Cir. 2011) (same); Carr v. Tillery, 591 F.3d 909, 919-20 (7th Cir. 2010) (same).

However, in this case,  the only evidence defendants cite in support of their argument that plaintiff falsified the allegations in his motion for sanctions is an affidavit from a prison staff member.  Dkt. #94.  Thus, determining who is telling the truth would require an evidentiary hearing.  Because plaintiff has withdrawn his allegations for the purpose of this case and the parties agree that the allegations are unrelated to plaintiff's pending claims, the question seems to be moot.  Defendants do not identify any cases in which a court dismissed a case as a result of a *withdrawn* motion.  This situation is similar to the one contemplated in Fed. R. Civ. P. 11(c)(2), which gives a party an opportunity to withdraw whatever document is the subject of the motion for sanctions.

For these reasons, I decline to impose a filing bar on plaintiff or to dismiss the case

as a sanction.  However, because plaintiff filed the motion in defiance of multiple orders from this court, I conclude that a more limited sanction is appropriate.  Accordingly, I will require plaintiff to reimburse defendants for the costs they incurred in responding to the motion.  If plaintiff does not have the funds now to cover those costs, he will have to make regular payments in accordance with prison rules as he does for any other debt.

## B. Motions for Summary Judgment

### 1. Failure to prevent self harm

Plaintiff's first claim is that defendants Cummings and Pickles, two correctional officers who worked on plaintiff's unit, failed to protect him from self harm.  In particular, plaintiff alleges that he informed defendants over the intercom in his cell that he was feeling suicidal, but they refused to help him, so he cut his arm multiple times.  To prevail on this type of claim, a prisoner must show both that defendants were aware of substantial risk that the prisoner would seriously harm himself and that the defendants consciously failed to take reasonable measures to prevent the harm.  Rice ex rel. Rice v. Correctional Medical Services, 675 F.3d 650 (7th Cir. 2012); Frake v. City of Chicago, 210 F.3d 779 (7th Cir. 2000).

Defendants' arguments relating to this claim are neither clear nor well developed, but I understand defendants to be seeking dismissal of this claim on three grounds: (1) defendants were not aware of a substantial risk of serious harm to plaintiff; (2) defendants took reasonable measures to help plaintiff; and (3) plaintiff's injuries were not sufficiently serious to implicate the Eighth Amendment.  Because all three of these issues are genuinely

disputed, I am denying defendants' motion for summary judgment.

With respect to their first argument, defendants say that "there is no evidence to support a conclusion that Officer Cummings or Pickle was cognizant that [plaintiff] was imminently suicidal." Dfts.' Br., dkt. #98, at 12. However, this argument overlooks plaintiff's own declaration in which he avers that he spoke to Cummings and Pickle over the emergency intercom and told them that he wanted them to contact the psychological services unit because he was feeling "suicidal" and was going to harm himself. Plt.'s Decl. ¶¶ 4, 25 and 26, dkt. #109. If that conversation occurred, it is sufficient to allow a reasonable jury to find that defendants were aware of a substantial risk of serious harm. Sanville v. McCaughtry, 266 F.3d 724, 737–38 (7th Cir. 2001) ("[I]f [the prisoner] told [the defendants] that he was suicidal, that alone should have been enough to impute awareness of a substantial risk of suicide.") (internal quotations omitted).

Defendants aver that there are no emergency intercom calls logged for the day at issue, Dfts.' PFOF ¶ 22, dkt. #115, and that they "do not recall" plaintiff making any statements that he was suicidal, id. at ¶ 24. However, defendants' log book and testimony simply show that there is a genuine issue of material fact; their evidence does not require judgment in their favor as a matter of law.

With respect to their second argument, that they acted reasonably, defendants say in their brief that "Officer Cummings properly communicated with the Unit Sergeant regarding Carter on October 17, 2013," Dfts.' Br., dkt. #98, at 12, though they do not say *what* they told the unit sergeant or even whether they ever discovered that plaintiff had

7

harmed himself.  Defendant Van Lanen (the unit sergeant) avers that he "was notified" that plaintiff was harming himself, but he does not say who notified him. Van Lanen Decl. ¶ 27, dkt. #115.  However, it is undisputed that Van Lanen took plaintiff to the health services unit, Dfts.' PFOF ¶ 33, dkt. #115, so how Van Lanen found out is not dispositive.

The bigger problem with defendants' argument is that it rests on an incorrect assumption, which is that plaintiff's claim is limited to an allegation that defendants failed to help him *after* he harmed himself.  But plaintiff is alleging that defendants failed to *prevent* his act of self harm.  In particular, he avers that, after he told defendants Cummings and Pickle that he was suicidal, they replied that "they did not give a fuck if [plaintiff] killed [him]self" and they refused to help him, which then led to his decision to cut himself.  Plt.'s Decl ¶ 5, dkt. #109.  Not surprisingly, defendants deny that they did this, but, again, that simply means that there is a genuine issue of material fact.

Finally, with respect to the harm plaintiff suffered, defendants cite contemporaneous notes from Amy Gandy, a nurse who examined plaintiff after he harmed himself. She wrote that plaintiff had two cuts on his left forearm, that both were approximately 1 to 1 ½ centimeters long, and that both "appear[ed] superficial."  Dkt. #103-1, exh. 1003, at 4. She gave him steri strips to cover the wounds.

As an initial matter, the Court of Appeals for the Seventh Circuit has rejected the view that a prisoner must show serious harm to sustain an Eighth Amendment claim.  Smith v. Peters,  631 F.3d 418, 420-21 (7th Cir. 2011).  If the prisoner was exposed to a substantial *risk* of serious harm, that is sufficient.  Id.  In any event, plaintiff disputes

8

defendants' characterization of the injury and avers that there was a substantial amount of blood.  Plt.'s Decl. ¶¶  6 and 38, dkt. #109.  See also Vann v. Vandenbrook, No. 09-cv-007-bbc, 2010 WL 148396, at *3 (W.D. Wis. Jan. 12, 2010) ("A reasonable jury could find that the  bleeding cuts on plaintiff's arms qualified as a serious medical need that required some treatment.").  Again, this is not a dispute that can be resolved on a motion for summary judgment.

In their reply brief, defendants seem to concede that, on its face, plaintiff's evidence is sufficient to require a trial.  Dfts.' Br., dkt. #113, at 2 ("[B]ased on the face of submissions such as those in response to summary judgment, Defendants may often consider conceding a dispute of material fact sufficient to require adjudication by jury.").  However, defendants go on to argue that the court should reject plaintiff's evidence as a matter of law. In support, they cite Seshadri v. Kasraian, 130 F.3d 798, 801 (7th Cir. 1997), a copyright case in which the court rejected the view that a court must credit testimony in an affidavit so long as the testimony is not "contrary to the laws of nature."  Rather, "the testimony can and should be rejected without a trial if, in the circumstances, no reasonable person would believe it."  Id. at 802.  The court upheld the district court's determination to reject an affidavit from the plaintiff, who averred that the defendant was not a joint author of an article, despite substantial correspondence by the plaintiff in which he repeatedly admitted that the defendant *was* a joint author, creating "a paper trail so unequivocal as to render the affidavit utterly incredible," particularly because the plaintiff did not attempt to explain the inconsistencies in his story.  Id. at 801-04.

9

The situation in Seshadri bears little resemblance to this case.  Defendants point to no previous statement from plaintiff in which he provided a different version of events. Instead, they ask the court to discredit plaintiff's testimony because he has made false allegations in the past, but they cite no authority for the view that a court may disregard evidence because of a litigant's conduct in a previous case.  Cf. United States v. Edwards, 581 F.3d 604, 612 (7th Cir. 2009) ("[T]he fact that a witness lies about one thing doesn't automatically invalidate all his testimony.").

There may be numerous reasons to doubt plaintiff's story, but it is for the jury to determine which side is more credible.  Even when a party relies solely on his own "self serving" testimony, that can be enough to defeat a motion for summary judgment.  Kellar v. Summit Seating Inc., 664 F.3d 169, 175 (7th Cir. 2011) ("[E]vidence presented in a 'self-serving' affidavit or deposition is enough to thwart a summary judgment motion."). Cases like Seshadri in which a court disregards a party's testimony are rare.  Since that case, the court has further explained the rule: "credibility issues are to be left to the trier of fact to resolve on the basis of oral testimony except in extreme cases. The exceptional category is—exceptional.  For the case to be classified as extreme, the testimony sought to be withheld from the trier of fact must be not just implausible, but utterly implausible in light of all relevant circumstances."  In re Chavin, 150 F.3d 726, 728 (7th Cir. 1998).

The cases are legion in which the court of appeals has admonished district courts to resist the temptation to decide which party's version of events is more persuasive or believable.  E.g., Miller v. Gonzalez, 761 F.3d 822, 827 (7th Cir. 2014) ("Sometimes the

10

heftiness of the evidence on one side, or the credulity of a particular litigant makes our task of suspending factual and credibility determinations difficult, but whatever the difficulty, we must stick to the task on summary judgment . . .  and avoid the temptation to decide which party's version of the facts is more likely true."); Ortiz v. City of Chicago, 656 F.3d 523, 532 (7th Cir. 2011) ("[A]t summary judgment, . . .  we resolve all disputed facts and make all reasonable inference in favor of the plaintiff and do not weigh the credibility of witnesses. We decline the defendants' invitation to disregard [the] statements [of two prisoner witnesses]."); Darchak v. City of Chicago Board of Education, 580 F.3d 622, 632 -633 (7th Cir. 2009) ("[I]t is not the court's job to assess the persuasiveness of [a witness's] testimony [at summary judgment.]"); Thomas v. Cook County Sheriff's Dept., 604 F.3d 293, 302 (7th Cir. 2010) ("When faced with conflicting, or even inconsistent testimony, the jury is free to believe one side over another.").

In accordance with these cases, I decline to make a credibility determination in the context of a motion for summary judgment.  Defendants are free to point out to the jury the reasons they believe that plaintiff's testimony should not be believed.

Alternatively, defendants argue in their reply brief that plaintiff "admits that his actions on October 17, 2013, in cutting himself were for the purpose of suing corrections officials.  Accordingly, Carter did not have a serious medical need on October 17, 2013, as his actions were intentional and calculated for the purpose of manipulating staff and events in an effort to manufacture this very lawsuit." Dfts.' Br., dkt. #113, at 1.  In support of this statement, defendants cite paragraph 39 of plaintiff's declaration, in which he says that,

whenever he harms himself, he asks officers to take a photograph of the injury "because I plan to sue" and because "it is a D.O.C. requirement that pictures be taken of all self harm injuries." Dkt. #109.

Plaintiff is not admitting in his declaration that he harmed himself in order to sue the defendants, or at least that is not the only reasonable interpretation of the statement. Another reasonable interpretation is that plaintiff wanted to preserve evidence to prove the officers' failure to protect him. Again, defendants are free to cross examine plaintiff about this issue at trial.

In any event, defendants cite no authority for the view that officers are free to disregard a prisoner's request for help if they conclude that the prisoner is harming himself in order to manipulate staff. Estate of Hill v. Richards, 525 F. Supp. 2d 1076, 1083–84 (W.D. Wis. 2007) ("[T]he duty of a jail official to prevent a suicide does not turn on the reason the prisoner may try to harm herself."); Jones 'El v. Berge, 164 F. Supp. 2d 1096, 1107 (W.D. Wis. 2001) (noting expert's testimony regarding "many situations . . . in which a staff member dismissed a cry for help as manipulation, only to find that the prisoner committed suicide"). In the case defendants cite, Collins v. Seeman, 462 F.3d 757, 761 (7th Cir. 2006), the court held that a prisoner's request to see a crisis counselor was not sufficient to put officers on notice that the prisoner would harm himself when the prisoner did not give a reason for the request. Unlike what plaintiff alleges in this case, the prisoner did not tell the officers that he was suicidal. Although the court noted that prisoners "sometimes make such requests as a means of manipulating prison staff," id., that was in the context of a

12

conclusion that the prisoner had not provided enough information to suggest a strong likelihood of self harm; the court did not say that officials could consider the reason for the potential harm before deciding whether to intervene.  See also Estate of Hill, 525 F. Supp. 2d at 1083 (in cases involving prisoner self harm, court of appeals "has not considered as relevant whether a suicide attempt was a product of mental illness or manipulation").

Plaintiff filed his own motion for summary judgment, but I am denying that motion as well.  As the above discussion shows, there are factual disputes that preclude granting summary judgment to either side.

## 2. Interference with access to courts

Plaintiff's second claim is that defendant Van Lanen refused to take pictures of plaintiff's  injuries in an attempt to prevent plaintiff from proving his claim, in violation of plaintiff's right to have access to the courts.  Again, defendants' arguments are neither clearly articulated nor well developed, but I understand them to be seeking dismissal on two grounds: (1) even without photographs, plaintiff can prove his claim in other ways; and (2) plaintiff has not shown that defendant Van Lanen intentionally interfered with plaintiff's right to have access to the courts.  I need not consider either of these arguments because I conclude that plaintiff's claim is premature.

The Supreme Court has identified two types of claims involving the denial of access to the courts. The first type is a forward-looking claim in which the defendant is "frustrat[ing]" the plaintiff's ability to "prepar[e] and fil[e] suits at the present time."

13

<u>Christopher v. Harbury</u>, 536 U.S. 403, 412 (2002).  The purpose of this type of claim is to remove a roadblock to litigation that the defendant has placed in the plaintiff's way.  <u>Id.</u>

The second type is a backward-looking claim in which the plaintiff alleges that the defendant hurt his ability to obtain relief in a case that he can no longer pursue.  <u>Id.</u> at 414. The purpose of this type of claim is to provide a remedy for the lost opportunity to obtain relief in the other case.  <u>Id.</u>

Plaintiff's claim does not fit into either of the types described  by the Supreme Court, something I should have recognized when screening the complaint.  There is no relief this court can grant plaintiff that would create the photographs that Van Lanen failed to take, so plaintiff's claim does not fit into first type of claim.  And plaintiff is still litigating the claim that the photographs could have helped to prove, so it is too soon to tell whether Van Lanen's alleged conduct will prevent plaintiff from obtaining relief on that claim.  In other words, if plaintiff prevails on his claim against defendants Cummings and Pickle at trial and obtains his requested relief, then defendant Van Lanen's alleged conduct will not have caused plaintiff any harm.

When a plaintiff brings an access to courts claim because of "speculation that he would suffer some unspecified future harm," the claim must be dismissed for the plaintiff's failure to identify an "actual injury."  <u>Marshall v. Knight</u>, 445 F.3d 965, 969–70 (7th Cir. 2006).  In accordance with this rule, many courts have dismissed access to courts claims when the claim that the defendant allegedly frustrated is still being litigated.  <u>Morales v. City of Los Angeles</u>, 214 F.3d 1151, 1155 (9th Cir. 2000) ("[D]enial-of-access-to-the-courts

14

claims arising from alleged police misconduct . . . are not ripe until the trial court proceedings are concluded adversely to the plaintiffs."); Vallade v. Fischer, No. 12-cv-00231 A M, 2014 WL 5481881, at *16 (W.D.N.Y. Oct. 29, 2014) ("[E]ven if the [evidence] was willfully destroyed in an effort to cover-up defendants' conduct, plaintiff has not established that this caused him to lose or inadequately settle a meritorious action, since his underlying Eighth Amendment claim arising from the March 30, 2009 accident remains pending."); Raymond v. Sloan, Civ. No. 1:13–423 WBS, 2014 WL 4215378, *3 (D. Idaho Aug. 25, 2014) ("At this stage in the litigation, it is premature to determine whether defendants' alleged cover-up will result in the defeat of her negligence claim.  Instead of speculating upon the fate of that claim, the court will instead dismiss plaintiff's § 1983 claim without prejudice"); Parrish v. Solis, No. 11-CV-01438, 2014 WL 1921154, at *13 (N.D. Cal. May 13, 2014) ("Plaintiff cannot allege the 'loss' of this claim at this point in time because litigation of that claim is still pending in this very Court. This leads to the conclusion . . . that his claim is premature and not ripe for adjudication."); Lynch v. Barrett, No. 09-CV-00405-JLK-MEH, 2010 WL 3938359, at *6 (D. Colo. Oct. 5, 2010) ("Plaintiff's injury is contingent on the success (or lack thereof) of his excessive force claim. . . . Plaintiff has yet to experience a concrete injury, or denial of meaningful relief, and therefore, his access-to-courts claim is unripe.").

Although defendants did not raise this issue, the actual injury requirement comes from the doctrine of standing, Marshall, 445 F.3d at 970, which is a jurisdictional issue that must be raised by the court even if the parties fail to do so.  Crosby v. Cooper B-Line, Inc.,

725 F.3d 795, 800 (7th Cir. 2013); <u>Schirmer v. Nagode</u>, 621 F.3d 581, 584 (7th Cir. 2010).

Accordingly, I am dismissing this claim without prejudice to plaintiff's refiling it after the

proceedings in this case are completed, which includes any proceedings on appeal.

It is important to note that, if plaintiff loses his Eighth Amendment claim at trial, that

does not necessarily mean that defendant Van Lanen violated plaintiff's right to have access

to the courts. Obviously, there are many other reasons that plaintiff's claim may fail that

have nothing to do with the absence of photographs. The only conclusion that I reach in

this order is that I cannot evaluate the merits of plaintiff's access to courts claim while his

Eighth Amendment claim is pending.


## ORDER

IT IS ORDERED that

1. Plaintiff Tommie Carter's motion to withdraw his motion for sanctions, dkt. #95,

is GRANTED, and his motion for sanctions, dkt. #86, is DENIED as moot.

2. The motion for sanctions filed by defendants Jay Van Lanen, Robert Pickle and

Antonio Cummings, dkt. #92, is GRANTED IN PART. Plaintiff will be required to

reimburse defendants for their reasonable expenses in responding to plaintiff's motion for

sanctions. Defendants may have until February 22, 2017, to submit an itemized list of those

expenses, along with an explanation regarding why they are reasonable. Plaintiff may have

until March 8, 2017, to respond. Defendants may have until March 15, 2017, to reply.

3. Defendants' motion for summary judgment, dkt. #97, is DENIED as to plaintiff's

claim that defendants Pickle and Cummings failed to protect plaintiff from self harm.

4.   Defendants' summary judgment motion is GRANTED as to plaintiff's claim against defendant Van Lanen.  That claim is DISMISSED WITHOUT PREJUDICE to plaintiff's refiling it after the proceedings in this case are completed.

5.   Plaintiff's motion for summary judgment, dkt. #110, is DENIED.

Entered this 8th day of February, 2017.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge